NEWMAN v. NEEL.

Opinion delivered February 14, 1921.

1. CREDITORS' SUIT—REMEDY AT LAW.—A judgment-creditor had a complete and adequate remedy at law by execution to enforce his judgment at law against the judgment-debtor's equity in lands, and a creditors' bill will not lie for that purpose.

2. CREDITORS' SUIT—EXTENSION OF JUDGMENT LIEN.—A creditors' bill will not lie to extend a judgment-creditor's lien; the remedy of *scire facias* being provided therefor.

Appeal from White Chancery Court; *John E. Martineau*, Chancellor; reversed.

*Miller & Yingling* and *John D. DeBois,* for appellant.

1.    The chancery court did not have jurisdiction of the suit instituted May 5, 1919, against J. W. and Ellen Matthews, Chalkley and J. G. Howard, which was in the nature of a creditor's bill, for the reason that Neel had not exhausted his remedy at law, and J. W. Matthews was insolvent, and the judgment might have been collected out of his personal property or other property than the land in question.    It is well settled equity will not assume jurisdiction where an adequate remedy at law exists.    27 Ark. 157.    Here the judgment-creditor sought to subject the land of his debtor to a sale under a decree of chancery without giving his debtor the statutory right to select and point out the property upon which an execution might be levied.    This right was given to J. W. Matthews, and he had the right to expect that Neel would pursue the remedy at law provided for collection of judgments at law.    Neel was not attempting to reach any equitable assets of J. W. Matthews in this suit, but simply trying to subject the land to the payment of the debt without showing that J. W. Matthews was insolvent. This was requisite and ought to have been shown and would have been shown if it had been a fact.    The agreed statement of facts shows that Neel brought this suit without any attempt to collect his common-law judgment. A creditor's bill can not be sustained until the remedies at law are exhausted.    5 Pom. Eq. Jur. (2 2ed.), § 2309; 99 Cal. 271; 37 Am. St. R. 50.    It is admitted that at the time Neel brought suit in chancery and while it was pending Matthews and his wife were actual residents of White County, Arkansas, and their home was upon said land.    No summons was ever issued or served, and neither Matthews nor his wife ever entered their appearance.    Therefore no suit was pending, and they are not bound by the decree.    The decree against Matthews and his wife was an absolute nullity and should have been restrained.

2. No lien existed at the time appellant purchased the land. The lien had expired as three years had passed and the lien was not revived. 101 Ark. 408; 24 R. C. L. 665, 685. See, also, 15 R. C. L., p. 904, § 382; 130 Ind. 33; 21 Utah 126; 60 Pac. 305; 30 Am. St. Rep. 194; 81 *Id.* 670.

3. Appellant was an innocent purchaser. The proceeding adopted here is proper. 101 Ark. 404.

*Culbert L. Pearce,* for appellees.

1. The chancery court had jurisdiction of the suit which was a creditors' bill and a lien existed. 101 Ark. 404; 53 *Id.* 568; 13 *Id.* 259; 24 R. C. L., pp. 666-685, §§ 1-2-12-25. Having jurisdiction for one purpose, it was proper to assume jurisdiction for all purposes. 1 Pom., Eq. Jur., pp. 218-258; 10 R. C. L. 265-288. See, also, 5 Pom., Eq. Jur., pp. 5087-5140, §§ 871-2-6-9-882, 890-1-5; 8 R. C. L., pp. 2-35; §§ 4-5, 1123-4-5-9 and 38; 32 Ann. Cas. 942, 945, 953.

2. The money was tendered in court and is now on deposit. 28 Am. & Eng. Enc. Law (2 ed.), p. 15; 26 R. C. L. 648-650.

Upon the question of appearance, see 2 Ark. 26; 2 R. C. L., pp. 322, 335, §§ 7 and 16; 2 A. & E. Enc. Pl. & Pr., pp. 632, 644-6; 16 L. R. A (N. S.) 177; 15 Mont. 503.

3. Newman was not an innocent purchaser, as he purchased with full knowledge.

4. On the question of *lis pendens,* see 57 Ark. 230; 75 *Id.* 230; 118 *Id.* 139; 98 *Id.* 105; 38 L. R. A. 772.

On question of *bona fide* purchaser, see 1 Words & Phrases, p. 825; *Ib.* 470.

HUMPHREYS, J. This suit was instituted in the White Chancery Court by appellant against appellees to enjoin a sale of lands by the commissioner in chancery in a suit instituted on May 5, 1919, by R. P. Neel against J. W. Matthews, Ellen Matthews, H. C. Chalkley and J. G. Howard, which was in the nature of a creditor's bill, for the purpose of subjecting the lands of J. W. Matthews to the payment of a common-law judgment which had been obtained by R. P. Neel against J. W. Matthews in

the White Circuit Court on August 2, 1916. Appellant alleged ownership of the lands by purchase from A. P. Matthews, who had obtained them from J. W. Matthews, and further alleged, as ground for the injunction, that R. P. Neel had not exhausted his remedy at law to collect his judgment, and, for that reason, a court of equity had no jurisdiction of the creditors' bill instituted by him.

The allegations of the bill were controverted by appellees, and the cause was submitted to the court upon the pleadings and an agreed statement of facts which resulted in a decree dismissing appellant's bill for injunction. From the decree of dismissal an appeal has been duly prosecuted to this court.

The agreed statement of facts, upon which the cause was submitted to the court, is as follows:

"That on the 25th of February, 1916, J. W. Matthews and Ellen Matthews, his wife, were the owners of 224 acres of land in White County, Arkansas, on which their homestead was located; that on said date they executed a mortgage to Minnie Biggs, conveying said lands to secure a note for fifteen hundred dollars, which mortgage was properly recorded.

"That on the second day of August, 1916, R. P. Neel obtained a judgment in the White Circuit Court against the said J. W. Matthews for the sum of $248.70 and ten per cent. interest from May 15, 1916, and for costs, amounting to $6.80.

"That on the 8th day of August, 1916, the said J. W. Matthews and Ellen Matthews, his wife, executed a second mortgage to Minnie Biggs, conveying the said lands to secure notes amounting to six hundred dollars, which deed of trust was also properly recorded.

"That thereafter, default having been made in the payment of said notes, as aforesaid, judgment was obtained in the White Chancery Court, and a lien was declared on the said land, and, in order to pay said judgment and prevent foreclosure of said lien, the said J. W. Matthews and Ellen Matthews, his wife, on November 22, 1918, borrowed from H. G. Chalkley, through his agent,

J. P. Howard, four thousand dollars and executed a mortgage to secure same, conveying the 224 acres which they then owned and 200 acres which was then being purchased by them from D. G. Pence.

"That the said four thousand dollars was used in satisfying the judgment of Minnie Biggs and part of the purchase money due Pence on the 200 acres as aforesaid; that, after the said four thousand dollars was so used, the said J. W. Matthews and Ellen Matthews, his wife, on the 15th day of March, 1919, executed a warranty deed to J. G. Howard, conveying to him all of the lands owned by them, consisting of 424 acres, which deed was intended as an equitable mortgage to secure the said J. G. Howard for the remainder of the purchase money due Pence and such other indebtedness as the said J. G. Howard might pay, or be compelled to pay, for the said J. W. Matthews, not to exceed, however, the sum of twelve hundred dollars, and said deed was also properly recorded.

"That, at the time of the execution of the aforesaid warranty deed, the said J. G. Howard and J. W. Matthews entered into the following written contract:

" 'This agreement made and entered into by J. W. Matthews of Romance, Arkansas, and J. G. Howard of Searcy, Arkansas, whereby said J. W. Matthews has on this 15th day of March, 1919, deeded to said J. G. Howard 424 acres of land in White County, Arkansas, fully described in said deed of said date; the consideration of same being $1,200 and acceptance of $4,000 mortgage made payable to H. G. Chalkley.

" 'It is understood that said J. W. Matthews shall have the right to redeem said land upon the payment of all expenses, commission on loan of $4,000, interest, costs and judgments and taxes on said land that are at present date a lien on said property with 10 per cent. interest on all amounts paid by said J. G. Howard.

" 'The redemption of said property shall be made on or before December 1, 1919, and if not redeemed by that date the said deed to remain in full force and effect. In case said land is redeemed before December 1, 1919,

said J. G. Howard agrees to quitclaim all his interest in said property to any person designated by said J. W. Matthews, and to deed the land in lots or parcels as may be requested by said Matthews.

<blockquote>
" 'J. W. Matthews.

" 'J. G. Howard.' "
</blockquote>

And at the time said deed was executed. the said J. W. Matthews and A. P. Matthews, his son, entered into a written contract, on the opposite side of the paper on which the contract was written, as follows:

"As a part of this contract it is understood that A. P. Matthews has an interest in the following lands described in the within-named contract on opposite side of this sheet, viz.: In the Pence 200 acres, and when said land is released, as set out in the within contract, then the said J. G. Howard is instructed, and it is agreed that he shall deed to said A. P. Matthews the following described lands, viz.:. The southeast quarter of the southwest quarter of section 4, and the north half of the south half of the southeast quarter and the north half of the south half of the south half of the southeast quarter of said section 4, all in township 7 north, range 10 west, as the owner of said 100 acres, and the remainder of said Pence land to A. P. Matthews, be conveyed by said J. G. Howard to Dorris Matthews, the following land: The east half of northeast quarter, section 4, 84.55 acres, and also the south half of the southwest quarter of the southwest quarter of section 34, all in township 7 north, range 10 west, White County, Arkansas.

"This the 15th day of March, 1919.

"J. W. Matthews."

"That the said R. P. Neel had no knowledge of the warranty deed from Matthews to Howard being given as an equitable mortgage, neither did he have knowledge of the aforesaid written contract, until pleaded by Howard on May 19, 1919, in a suit filed by said Neel as hereinafter set forth.

"That prior to the first day of December, 1919, A. P. Matthews redeemed the said land from the said J. G.

Howard and received a quitclaim deed from Howard to J. W. Matthews; and on the 15th day of December, 1919, the said J. W. Matthews and Ellen Matthews, his wife, executed a warranty deed to the said A. P. Matthews, conveying all of their lands consisting of 424 acres and which included their homestead.

"That on the same day the said A. P. Matthews conveyed said land to the plaintiff, D. W. Newman, the consideration being the assumption of the four thousand-dollar mortgage through Chalkley, and the exchange of other lands then owned by Newman, and the said Newman went into possession of said land immediately under his deed made by Matthews.

"That subsequent to the execution of the warranty deed from J. W. Matthews and wife to J. G. Howard, the said J. W. Matthews and A. P. Matthews continued in possession of said land under an agreement to pay rent in the event that they failed to redeem from the warranty deed or equitable mortgage.

"That on the 5th day of May, 1919, the said R. P. Neel filed a complaint in the White Chancery Court against J. W. Matthews and Ellen Matthews, his wife, H. G. Chalkley, J. G. Howard and others, which suit was in the nature of a creditor's bill, for the purpose of subjecting all of Matthews' 424 acres of land to a lien to secure his common-law judgment hereinbefore mentioned, and prayed that his rights be investigated, determined and declared, and, finally, that he have a lien against said lands to secure the payment of said judgment, and, if said judgment be not paid within a reasonable time, that said lands be sold to satisfy same.

"That, at the time of the filing of the complaint by the said R. P. Neel, the said Ellen Matthews, the wife of J. W. Matthews, was an actual resident of White County, Arkansas, and was residing upon the lands involved herein; and that her husband, J. W. Matthews, was at the time temporarily absent from the State as a fugitive from justice, but the said J. W. Matthews was returned to White County before the submission of said cause and

no summons was ever issued on the complaint for either the said Ellen Matthews or J. W. Matthews; and service of process was attempted to be had upon them by the publication of a warning order, issued upon the following affidavit:

"Cul L. Pearce upon oath says: That he is a licensed and practicing attorney at law and solicitor in chancery, and that he is authorized to file and prosecute this action; that the statements of fact in the foregoing complaint are true and correct, according to the best of his knowledge and belief; and that he has made diligent inquiry, and that it is his information and belief that the said Minnie Biggs, J. W. Matthews, Ellen Matthews and H. G. Chalkley are nonresidents of the State of Arkansas, and that personal service can not be had upon them.

"That at the time of the making of said affidavit by the said Cul L. Pearce, the plaintiff in said suit, R. P. Neel, was not absent from the county and was not mentally incapable of making the same or was not physically unable to attend before the officer and make said affidavit.

"That the said J. W. Matthews and Ellen Matthews in no wise entered their appearance in said cause.

"That the said cause proceeded to a hearing in White Chancery Court upon the issues made by the complaint of the plaintiff, R. P. Neel, the answers of J. G. Howard and H. G. Chalkley and the testimony of witnesses, and the court on December 6, 1919, rendered a decree in which, among other things, it is said:

" 'It is therefore considered, ordered, adjudged and decreed that plaintiff, R. P. Neel, has a lien upon said lands (meaning the 200 acres purchased from D. G. Pence as heretofore set out), by virtue of the common-law judgment hereinbefore set out; that said lien is prior and paramount to any and all rights, interests, equity and claim of any of the defendants, their heirs or assigns, or any one claiming or holding under them, except as to the amount of purchase money advanced by the defendants, Chalkley and Howard, with the interest thereon, and that he is now entitled to have said land sold if necessary for

the purpose of satisfying said judgment now amounting to $358.75, with interest from this date at the rate of ten per cent. per annum.'

"That the above decree was not entered of record by the White Chancery Court until the 6th day of January, 1920, on account of the details of the same not being agreed upon by the attorneys on the 8th day of December, 1919, at which time it was formally rendered.

"That at the time of the execution, of the warranty deed by J. W. Matthews and wife to J. G. Howard, in lieu of a mortgage, as aforesaid, the said J. G. Howard held back the sum of $248.70 with which to satisfy the judgment rendered in favor of R. P. Neel against J. W. Matthews, as aforesaid, which amount he later tendered into court with which to satisfy said judgment, which said tender was refused on the ground that it was only for the face of the judgment, exclusive of interest and costs.

"That on December 1, 1919, when the said J. G. Howard reconveyed said lands to the said J. W. Matthews by quitclaim deed, he required an agreement from the said A. P. Matthews to indemnify him, the said Howard, against the rendition of a personal judgment against him in the suit that was then pending, filed by the said Neel as aforesaid.

"That at the time D. W. Newman purchased said lands on December 15, 1919, he was advised that the suit of Neel as aforesaid was pending, and knew that the said J. G. Howard had required A. P. Matthews to deposit the sum of $300 in the Bank of Searcy to indemnify him (Howard) against a personal judgment as aforesaid, and he purchased said lands, relying upon said indemnity as a protection to him, and the advice of his counsel that no lien at that time existed against said lands.

"That the said R. P. Neel took no steps to renew his judgment-lien upon his common-law judgment, obtained August 2, 1916, as aforesaid, by writ of *scire facias* or other method pointed out by the statutes for the renewal of judgment-liens, and filed no *lis pendens* at the time,

or subsequent thereto, of the filing of his suit in the chancery court to subject said lands to the payment of his judgment.''

Appellant insists that, under the agreed statement of facts, R. P. Neel had a complete and adequate remedy at law, by execution, to enforce his judgment against the equity of J. W. Matthews in said lands, during the continuance of the lien of said judgment, and ample remedy by *scire facias* to renew the lien of said judgment from time to time, and that it was unnecessary, in order to reach the equity of J. W. Matthews in said land, to resort to a court of equity to declare the priority of liens. According to the statement of facts, R. P. Neel obtained a judgment for $248.70 against J. W. Matthews in the circuit court of said county on the 2d day of August, 1916. At that time, there was only one mortgage antedating the judgment upon the 224-acre tract in said county owned by J. W. Matthews. The validity of that mortgage was not questioned in the creditors' bill filed by R. P. Neel on May 5, 1919, against J. W. Matthews and others in the White Chancery Court. Any mortgages or conveyances of that tract of land, or land subsequently acquired by J. W. Matthews, were necessarily made subject to the judgment-lien in favor of Neel for $248.70 during its life as a lien. The equity of J. W. Matthews in all the lands could have been sold under execution on the judgment without reference to subsequent conveyances or incumbrances. All subsequent grantees stood in the place of J. W. Matthews, and their rights could not rise to a higher level than his during the existence of the judgment-lien. It was not necessary, before the expiration of the judgment-lien, to go into equity to set aside subsequent incumbrances or conveyances in order to reach the equity of Matthews. The remedy being complete at law, it was improper for a court of equity to assume jurisdiction of the cause for the purpose of declaring priorities of liens. The court of equity, having no jurisdiction for this purpose, could not assume jurisdiction to extend the lien of the judgment upon the theory that,

having taken jurisdiction for one purpose, it would exercise jurisdiction for all purposes. The remedy to extend the lien beyond the three-year period from the date of the rendition of the judgment under the statute was by *scire facias*. This court, in the recent case of *Waldstein v. Williams*, 101 Ark. 404, said: "The lien of a judgment upon real estate commences upon the day of the rendition of the judgment and continues for three years, subject to be further continued or revived by suing out a *scire facias* and taking judgment for that purpose." Having ruled that the chancery court had no jurisdiction of the suit instituted on May 5, 1919, in the nature of a creditors' bill to enforce a common-law judgment against the equity of J. W. Matthews in said lands, it is unnecessary to determine the other questions urged for reversal of the decree dismissing appellant's bill for injunction.

For the error indicated, the decree of the chancellor dismissing appellant's bill is reversed and the cause remanded with instructions to reinstate it and to enter a decree in conformity with the prayer thereof.